## SETTLEMENT STATEMENT

| | |
|---|---|
| Seller: | **AMERICAN AUTOMOTIVE SERVICES, LLC** |
| Purchaser: | **CANAIMA, LLC** |
| Business: | **AAMCO Transmission Center #4771**<br>842 Joe Frank Harris Parkway, Cartersville, Bartow County, Georgia |
| Closing Date: | **November 8, 2012** |
| Settlement Agent: | **Lane & Karlo, LLP** |
| File Number: | **LK124148** |

### A. PURCHASE AND SALE:

| | | | |
|---|---|---|---|
| (1) | Purchase Price | | $ 225,000.00 |
| (2) | Earnest Money | $ 20,000.00 | |
| (3) | Purchase Money Indebtedness | 100,000.00 | |
| (4) | Personal Property Tax Proration (11/02/12 – 12/31/12) | | 65.03 |
| (5) | Reimbursement for Security Deposit re Lease | | 3,700.00 |
| (6) | Balance Due Seller at Closing | 108,765.03 | |
| | | $ 228,765.03 | $ 228,765.03 |

169330.1

**B.   ACCOUNT OF SELLER:**

| | | |
|---|---|---:|
| (1) | Balance Due from Purchaser | $ 108,765.03 |
| (2) | Recording Fee (½) re UCC Financing Statement | ( 7.00) |
| (3) | Attorneys' Fees (½) to Lane & Karlo, LLP | (1,012.50) |
| (3) | Bartow County Personal Property Taxes - 2012 | (440.76) |
| (4) | Audit Fees to AAMCO Transmissions, Inc. | (400.00) |
| | Net Due Seller | $ 106,904.77 |

**C.   ACCOUNT OF PURCHASER:**

| | | |
|---|---|---:|
| (1) | Balance Due Seller | $ 108,765.03 |
| (2) | Recording Fee (½) re UCC Financing Statement | 7.00 |
| (3) | Attorneys' Fees (½) to Lane & Karlo, LLP | 1,012.50 |
| | Balance Due from Purchaser | $ 109,784.53 |

169330.1

## ADDENDUM TO SETTLEMENT STATEMENT

Seller: **AMERICAN AUTOMOTIVE SERVICES, LLC**

Purchaser: **CANAIMA, LLC**

Business: **AAMCO Transmission Center #4771**
**842 Joe Frank Harris Parkway, Cartersville, Bartow County, Georgia**

Closing Date: **November 8, 2012**

Settlement Agent: **Lane & Karlo, LLP**

File Number: **LK124148**

Seller and Purchaser acknowledge and agree as follows:

1. Closing Attorney Representation. The Seller and Purchaser hereby acknowledge (a) that the legal services performed by Lane & Karlo, LLP, Attorneys at Law, are on behalf of Seller in connection with this transaction; (b) that any fees paid to Lane & Karlo, LLP are for representation of Seller; and (c) that Lane & Karlo, LLP does not represent any other party in and to this transaction.

2. Survival of Contract. As part of the consideration of this sale, the Asset Purchase Agreement by and between Seller and Purchaser is incorporated herein and made a part hereof; the promises, representations, terms and conditions contained therein are true and accurate as of the date hereof and shall survive the closing and shall not merge upon the delivery of the settlement documents.

3. Agreement to Correct Clerical Errors. Seller and Purchaser agree that should any inadvertent errors or omissions subsequently be discovered in any document(s) executed at settlement, such party or parties as applicable shall promptly and fully cooperate and adjust or correct such errors or omissions

4. Authorization to Disburse. Seller and Purchaser each agree and acknowledge that they have reviewed and approved the adjustments, prorations and disbursements shown on the Settlement Statement.

PURCHASER:
**CANAIMA, LLC**

By: _____
Rodolfo G. Pena-Perez, Member

By: _____
Naima A. Mogollon, Member

SELLER:
**AMERICAN AUTOMOTIVE SERVICES, LLC**

By: _____
Thomas E. Nichols, Member

SETTLEMENT AGENT:
**LANE & KARLO, LLP**

By: _____
Tom L. Lane, Partner

169330.1

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (hereinafter referred to as this "Agreement") is made as of the ___ day of September, 2012, by and between **AMERICAN AUTOMOTIVE SERVICES, LLC,** a limited liability company organized under the laws of Georgia, having its principal office at 842 Joe Frank Harris Parkway, Cartersville, Georgia 30120 (hereinafter referred to as "Seller"), and **CANAIMA, LLC,** whose address is 20 Singletree Ridge, SW, Cartersville, Georgia 30120 (hereinafter referred to as "Buyer").

### WITNESSETH

WHEREAS, Seller owns the assets of business known as AAMCO Transmission Center #4771, located at 842 Joe Frank Harris Parkway, Cartersville, Georgia 30120 (hereinafter referred to as the "Business"); and

WHEREAS, Seller desires to sell, assign, transfer, convey and deliver to Buyer all of Seller's assets used in the operation of the Business, including: tools, machinery, equipment, supplies, inventory, signage, furniture and all such other personal property described on Exhibit "A" attached hereto and by this reference incorporated herein, together with customer lists, customer files, supplier lists and goodwill (collectively the "Assets" and

WHEREAS, as an inducement to Buyer to purchase the Assets, Seller and Seller's principal and sole member is willing to give Buyer certain covenants not to compete, without which covenants Buyer would not enter into this Agreement; and

WHEREAS, Buyer and Seller desire to set forth in this Asset Purchase Agreement the terms and provisions of their agreements and understandings;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

### 1. PURCHASE OF ASSETS

Seller agrees to sell the following assets to Buyer and Buyer agrees to purchase the following assets of Seller:

1.1  All of Seller's Assets, including all tools, machinery, equipment, supplies, inventory, signage, furniture and all such other personal property described on aforesaid Exhibit "A";

1.2  Seller's entire interest in and to Seller's lists of customers and customers' files containing the names and addresses of Seller's customers, with each file containing a description of the services requested by each customer and the services rendered by Seller.

1.3  A certain covenant not to compete whereby Seller and Seller's sole member agree not to compete with Buyer in the automotive repair service business within a ten (10) mile radius of the Business address for a period of five (5) years.

1

1.4 Any such rights as Seller, as current franchisee, may have in and to the name of the business and the telephone number of (770) 607-1444, the fax telephone number of (770) 386-4344, web address, if any; and the goodwill of the business as a going concern.

1.5 Any intellectual property rights, including trademarks, service marks, copy rights trade secrets and trade names.

## 2. CONTINGENCIES

2.1 This Agreement is subject to and contingent upon Buyer's good faith ability to obtain:

a) Written approval of AAMCO Transmissions, Inc. for assumption of the franchise agreement in the same, or more favorable, contractual terms as they currently exist; and

b) Written approval of landlord for assumption of the lease agreement for the premises occupied by the Business, in the same or more favorable, contractual terms as they currently exist, which approval shall include release of Seller from liability thereunder.

c) The successful completion before de expiration of the Due Diligence Period (as defined below), in Buyer's sole discretion, of the due diligence of the Business and the Assets, and of the review of the franchise.

2.2 In the event that Buyer is unable to obtain such written approvals prior to the closing, or in the event that Buyer decides before de expiration of the Due Diligence Period (as defined below) (i) to modify the Purchase Price, (ii) withdraw its offer, or (iii) terminate this Agreement for any reason or no reason; the Earnest Money paid pursuant to enumerated provision 4.1, *infra*, shall be refunded within five (5) calendar days to Buyer in immediately available funds, whereupon this Agreement shall become null and void and neither party shall have any further rights or obligations hereunder.

## 3. CLOSING

3.1 The closing shall be held at the offices of Seller or at such other time and place as the parties may mutually agree, on or before seventy-four (74) calendar days following the date of execution of this Agreement. The date and event of such exchange of consideration for the Assets being purchased are respectively hereinafter referred to as the "Closing Date" and the "Closing".

3.2 Seller agrees to deliver to Buyer at the Closing such certificates, bills of sale, documents of title, and other instruments of conveyance and transfer, in a form satisfactory to Buyer and Buyer's counsel, as shall be necessary or practical to effectuate the sale, assignment, transfer, conveyance and delivery to Buyer of any and all assets to be sold, assigned, transferred, conveyed and delivered hereunder, and all of Seller's contracts, contract amendments, commitments, leases, books, records, including, but not limited to, customers' files and records, and other data relating to such property, and assets of Seller and the business of Seller. In addition, Seller shall deliver the Covenant Not to Compete executed by Seller and Seller's sole member.

## 5. DUE DILIGENCE

For a period of sixty (60) days from date hereof (hereinafter the "Inspection Period" or "Due Diligence Period"), Seller shall give to Buyer, and to Buyer's representatives, full access during normal business hours to all of the properties, assets records, contracts, licenses, and franchises related to the business and shall furnish to Buyer all information with respect to the business as Buyer may from time to time reasonably request. If Buyer, in his sole discretion, determines that the Business or the assets are not satisfactory to Buyer, then Buyer shall notify Seller prior to expiration of the Inspection Term of its desire to terminate this Agreement. In such event, the Earnest Money shall be forfeited pursuant to Sections 2.2 and 4.1, supra, and the parties to this Agreement shall be relieved of all rights and obligations.

## 6. REPRESENTATIONS AND WARRANTIES OF SELLER

As a material inducement to Buyer to enter into this Agreement, Seller hereby makes the following representations and warranties, each of which shall be true and correct as of the date hereof and as of the date of Closing:

6.1 Seller is a limited liability company duly organized, validly existing, and in Good standing under the laws of the State of Georgia. Seller has the power to own its properties and assets and to carry on its business as it is now being conducted.

6.2 The assets being conveyed to Buyer pursuant to this Agreement are owned exclusively by Seller and have been used exclusively by Seller in the operation of Seller's business and no other person has any right, title or interest in or to these assets.

6.3 Seller has full power to execute and perform this Agreement and to transfer its properties and assets as herein provided.

6.4 Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby will cause, or give any person ground to cause, the maturity, acceleration or increase of any liability or obligation of Seller and will not conflict with, violate or constitute default under any contract or other instrument to which Seller is a party or to which Seller is bound.

6.5 Seller knows of no consent or approval required by any governmental authority to be required in connection with the execution and delivery by Seller of this Agreement or the consummation by Seller of the transactions contemplated hereby.

6.6 Seller has good and marketable title to all those assets set forth in enumerated provision 1, *supra,* and which are to be conveyed to Buyer hereunder and at Closing Buyer shall have good and marketable title to and possession and control of all of said assets Free of pledges, liens, claims, charges, encumbrance or other material adverse interest of any kind except liens of current state and local property taxes not yet due and payable.

6.7 No customer has any claim or basis for any claim for free or reduced charges relating to any services rendered to such customer by Seller or for reduction, deduction or set-off against the same. No oral agreement has been entered into with any customer relating to the services rendered to such customer by Seller.

6.8 Neither this Agreement nor the sale and purchase of the assets or any of the transactions contemplated by this Agreement was induced or procured through any person, firm, cor-

4

poration or other entity acting on behalf of, or representing, Seller as broker, finder, investment banker, financial advisor or in any similar capacity.

6.9  The real property upon which the business is located is legally occupied by Seller and such use and occupation has been approved by all governmental authorities, the approval of which is required for such use and occupation; all material approvals, permits and certificates required to occupy such real property and operate the business of Seller have been obtained and there is no pending or threatened condemnation or eminent domain proceedings which would have a material adverse effect on all or any part of the assets of Seller. The present use of such real property is in compliance with all applicable zoning ordinances, building codes, fire codes or health department ordinances pertaining thereto, and does not violate in any material respect any municipal, county, state or federal regulation.

6.10  All of the machinery, equipment, furniture and fixtures owned by Seller and to be conveyed to Buyer hereunder are in good operating condition and a state of reasonable maintenance and repair, and no maintenance or repair has been deferred.

6.11  There is no claim, suit, action, governmental investigation or litigation, or material legal, administrative, arbitration or other proceeding, of any kind pending or threatened against, relating to or involving Seller that would give rise to any claim to or any encumbrance on the assets being conveyed herein or prohibit or restrict the operation of the business by Buyer. Seller does not know nor does Seller have any reason to know of any grounds for any such claim, suit, action, investigation, litigation or proceeding. Seller is not now subject to any order, writ or decree of any court or other governmental authority that would prohibit the completion of the transactions contemplated by this Agreement.

6.12  The Bulk Sales Act (O.C.G.A. § 11-6-101, *et. seq.*) is not applicable to the transactions contemplated by this Agreement. Seller's principal business is not the sale of merchandise from stock and Seller is not the type of business described in O.C.G.A. § 11-6-102(3).

## 7. REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby warrants and represents and agrees to and with Sellers as follows:

7.1  No broker, finder or investment advisor has acted directly or indirectly as such for, or is entitled to any compensation from the Buyer in connection with this Agreement or the transactions contemplated hereby.

7.2  Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby will cause, or give any person ground to cause, the maturity, acceleration or increase of any liability or obligation of Buyer and will not conflict with, violate or constitute default under any contract or other instrument to which Buyer is a party or to which Buyer is bound.

## 8. INDEMNIFICATION

Seller hereby agrees to defend and to indemnify Buyer and to hold Buyer wholly harmless from and against any and all losses, liabilities, damages, costs (including, without limitation, court costs) and expenses (including, without limitation, reasonable attorney's fees) which Buyer may incur as a result of, or with respect to, any inaccuracy in or breach of any representation, warranty, covenant or agreement by or on behalf of Seller contained in this Agreement or contained in any certificate, agreement

5

or document of Seller or any of any member of Seller delivered to Buyer in connection with the consummation of the Transactions contemplated hereunder; any tax claim or liability existing, occurring, or based on an action or inaction attributable to Seller taking place before the closing Date. By way of explanation and not by way of limitation, Seller shall be obligated to indemnify and hold harmless Purchaser against any and all actions, suits, proceedings, claims, demands, judgments, costs and expenses incident to any breach of any representation or warranty given by Seller; or tax liability claim. Any payment to Seller due at Closing or pursuant to the Promissory Note delivered by Buyer to Seller as set forth m enumerated provision 4.2, *supra,* shall be subject to a right of set-off by Buyer for any sums paid or accrued to be paid by Buyer for which Seller has given to Buyer an indemnification hereunder and shall be subject to right of set-off by Buyer. Buyer's right of set-off and direct payment and reduction in the purchase price shall not be deemed Buyer's exclusive remedy for Seller's breach of any representation, warranty or agreement set forth herein, all of which shall survive the closing and any setoffs made by Buyer. Buyer shall have the right without notice to Seller to reach an agreement with any person or entity claiming an interest in or to these assets.

## 9. EQUIPMENT WARRANTY

Seller warrants and agrees that it will cooperate with Buyer in transferring all assignable warranties applicable to or covering those assets being purchased by Buyer hereunder, and will execute the necessary documents to effectuate said assignment.

## 10. RISK OF LOSS

The risk of loss to any of the assets being purchased by Buyer shall remain with Seller until this transaction is fully closed, all documents exchanged, and the transfer of title to all assets completed by delivery of bills of sale or other instruments of conveyance. Buyer shall have the option to either cancel this Agreement without further obligation or to negotiate a pro rata reduction in the purchase price of the assets in the event of any loss, destruction or damage to the assets by reason of fire, theft, vandalism or other casualty prior to closing.

## 11. ACCOUNTS RECEIVABLE

Seller hereby covenants and agrees that Seller will deliver to Buyer at the Closing hereunder a true and correct list of all accounts receivable of the business as of such date. Such list shall also include any potential refunds owed by Seller, and any amounts owed in pre-paid services. Seller shall be entitled to all payments on or in settlement of such accounts receivable, and to the extent Buyer shall receive any such payments, Buyer shall promptly transfer or submit same to Seller; provided, however, that Buyer may deduct from any such payment any refunds due to any clients of the Business. All payments from customers listed on said list delivered at the Closing shall first be presumed to be payments toward, or in satisfaction of, such accounts receivable and, after satisfaction of such accounts receivable, any remaining funds from such payments or any additional payments shall be assumed to be payments to the account of Buyer for work performed by Buyer. All of the payments received by Buyer from and after the date of Closing, and which are not included or identified on the list of Seller's accounts receivable, regardless of from whom and when accrued, shall be and become the property of Buyer.

## 12. OTHER COVENANTS OF SELLER

For a period commencing with the date of this Agreement and terminating on the twenty- eighth (28th) day following the date of Closing, Seller covenants and agrees that: (i) Seller and Seller's sole member shall use their best efforts to preserve the business and the business relations with clients and others, (ii) Seller and Seller's sole member shall train Buyer in the history and operation of the business and will

6

provide Buyer with all the necessary introductions to customers or potential customers of Seller's business to enable the Buyer to take effective control and be in possession of, the business of Seller on the date of Closing hereunder. Seller and Seller's sole member shall receive no compensation for such introductions and the training of Buyer and Buyer shall not be required to pay for any such training by Seller.

Promptly upon execution of this Agreement, Seller shall use its best efforts to assist in obtaining all consents (including without limitation, any government or governmental agency that may be required, and AAMCO Transmissions, Inc., the franchisor) necessary to effect the sale, assignment, transfer, conveyance and delivery of the assets as contemplated by this Agreement; provided, however, that Buyer shall pay the Franchise Transfer Fee and the Owner's Training School Fee imposed by AAMCO Transmissions, Inc. From time to time after the closing hereof, at Buyer's request and without further consideration, Seller and Seller's sole member shall agree to execute and deliver such other instruments of conveyance and transfer, consents, assignments and guarantees, and take such other action as Buyer, at Buyer's sole expense, may reasonably require more effectively to sell, assign, transfer, convey, deliver and vest in Buyer and to put Buyer in possession of, any assets to be sold, assigned, transferred, conveyed and delivered hereunder.

## 13. TERMINATION

Notwithstanding anything in this Agreement to the contrary, this Agreement may be terminated as follows and in no other manner:

13.1   By Seller, if there has been a material misrepresentation or material breach on the part of Buyer in the representations, warranties and covenants of Buyer set forth herein or if there has been any material failure of the part of Buyer to comply with his obligations hereunder.

13.2   By the Buyer, at any time and for any reason before the expiration of the Due Diligence Period; or if there has been a material misrepresentation or material breach on the part of the Seller in any of the representations, warranties and covenants of the Seller set forth herein, or if there has been any material failure on the part of Seller to comply with its obligations hereunder.

13.3   The termination provided for by this section will be effective only after written notice thereof, signed on behalf of the party for which it is given, shall have been given to the other.

13.4   In the event that this Agreement shall be terminated, such termination shall be without prejudice to any claim for damages or equitable relief which any party hereto may have hereunder as a consequence of any breach of any representation, warranty, covenant or agreement or failure to perform obligations by the other party giving rise to such termination.

## 14. CONDITIONS PRECEDENT TO SELLER'S OBLIGATION TO CLOSE

Each and every obligation of Seller to be performed in connection with the Closing shall be subject to the satisfaction of the Closing of the following conditions:

14.1   The representations and warranties made by Buyer in this Agreement shall be true and correct on and as of Closing with the same effect as though such representations and warranties had been made or given on and as of Closing except as the same may be effected by this Agreement;

7

14.2 Buyer shall have performed in all material respects all obligations and complied with all covenants and agreements required by this Agreement to be performed or complied with by Buyer prior to or on the Closing Date.

14.3 Seller shall have received the consideration and security instruments as set forth in enumerated provision 4, *supra*, of this Agreement.

## 15. CONDITIONS PRECEDENT TO BUYER'S OBLIGATION TO CLOSE

Each and every obligation of Buyer to be performed in connection with the Closing shall be subject to the satisfaction on the Closing of the following conditions:

15.1 The representations and warranties of Seller contained herein shall be true and correct in all material respects on the Closing with the same effect as though such representations and warranties had been made or given on and as of the Closing except as the same may be affected by this Agreement.

15.2 Seller shall have performed in all material respects all obligations and complied with all covenants and agreements required by this Agreement to be performed or complied with by Seller prior to or on the Closing.

15.3 Seller shall have delivered to Buyer such bills of sale and other instruments of conveyance necessary to effectively transfer good and marketable title to the assets to Buyer as set forth enumerated provision 3.21, *supra*.

15.4 Seller shall have obtained and delivered to Buyer the Covenant Not to Compete as set forth in enumerated provision 1.4, *supra*, of this Agreement.

15.5 Buyer shall have obtained written approval of AAMCO Transmission, Inc. for assumption of the franchise agreement in the same, or more favorable, contractual terms as they currently exist.

15.6 Buyer shall have obtained written approval of landlord for assumption of the lease agreement for the premises occupied by the Business, in the same or more favorable, contractual terms as they currently exist, which approval shall include release of Seller from liability thereunder.

15.7 Buyer shall have completed to its satisfaction the Due Diligence during the Due Diligence Period. Buyer shall be deemed to have completed satisfactorily the Due Diligence if it does not expressly notifies Seller to the contrary before the expiration of the Due Diligence Period.

## 16. PRORATIONS AND ASSUMPTIONS

Personal property ad valorem taxes for the calendar year 2012, utility expenses and all other operating charges shall be prorated between Seller and Buyer as of the Closing Date hereunder. Buyer shall assume and agree to pay throughout the remaining term for contracted services, *e.g.* ---uniforms, telephone, internet, etc.

## 17. MISCELLANEOUS

17.1 This Agreement shall inure to the benefit of and shall be binding upon the parties and their heirs, successors, representatives and assigns.

8

17.2 This Agreement shall be deemed to be made in, and in all respects shall be interpreted, construed and governed by and in accordance with, the laws of the State of Georgia.

17.3 All representations, warranties, covenants and agreements made by the parties in this Agreement and pursuant to the terms hereof shall survive the consummation of the transactions contemplated by this Agreement, notwithstanding any investigation heretofore or hereafter made by any of them or on behalf of any of them.

17.4 The section and paragraph headings contained in this Agreement are for reference purposes only and shall not effect in any way the meaning or interpretation of this Agreement.

17.5 All communications provided for hereunder shall be in writing and shall be deemed to be given when delivered in per on or deposited with the United States Postal Service, first class, registered or certified, return receipt requested, with proper postage prepaid and shall be deemed to be received on the third business day thereafter and,

17.5.1 If to Buyer, addressed to:

Canaima, LLC
20 Singletree Ridge, SW
Cartersville, Georgia 30120
Attention: Mr. Rodolfo G. Pena-Perez

17.5.2 If to Seller, addressed to:

American Automotive Services, LLC
842 Joe Frank Harris Parkway
Cartersville, Georgia 30120
Attention: Mr. Thomas E. Nichols

Or at such other place or places or to such other person or persons as shall be designated in writing by the parties hereto.

17.6 This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

17.7 This Agreement embodies the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter. This Agreement may be modified only by a written instrument signed by each of the parties hereto.

17.8 The parties hereto shall execute such further documents and shall provide those consents necessary to complete the transactions contemplated by this Agreement and shall convey those warranties which are in favor of Seller, if any, in regard to the assets being conveyed to Buyer.

17.9 If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Agreement, such provisions shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or

9

unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of such illegal, invalid, or unenforceable provision, there shall be added automatically as part of this Agreement a provision or as similar to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid and enforceable.

17.10 Time is of the essence of this Agreement.

This Agreement executed this the ____10th____ day of September, 2012.

SELLER:

**AMERICAN AUTOMOTIVE SERVICES, LLC**

By: _____

Thomas E. Nichols, Member

BUYER:

**CANAIMA, LLC**

By: _____
Rodolfo G. Pena-Pérez

By: _____
Naima A. Mogollon

*(SIGNATURES CONTINUED ON FOLLOWING PAGE)*

ASSENT BY GUARANTORS:

*[signature]*

Rodolfo G. Pena-Pérez

*[signature]*

Naima A. Mogollon